ANDREY KONOVALCHIK vs. SCHOOL COMMITTEE OF SALEM
& another.

Essex.   April 3, 1967. — May 10, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& REARDON, JJ.

*Contract*, What constitutes, With municipality. *School and School Committee*. *Municipal Corporations*, Officers and agents. *Public Board*.

No contract was made where a vote of the school committee of a city to award one a contract as head football coach for three years was followed by a vote to request the city solicitor to draw up the contract and have it at a meeting of the committee but the city solicitor by reason of illness did not draw up any contract and, although a form of contract drawn up by one of the members of the committee was signed by the proposed coach and a majority of the committee, it was not submitted to the committee at a meeting.

BILL IN EQUITY filed in the Superior Court on June 13, 1966.

The defendants appealed from a final decree entered after hearing by *Tomasello, J.*

*Alfred A. Dobrosielski*, City Solicitor, for the defendants.
*Edward O. Proctor* for the plaintiff.

WHITTEMORE, J. The issue on this appeal in a proceeding under G. L. c. 231A is whether, as the judge in the Superior Court ruled, certain votes of the defendant school committee on December 13, 1965, and subsequent events resulted in a three year contract with the plaintiff as head coach of football. The evidence is reported.

Most of the facts are not in dispute. We state others as the judge could have found them. The committee has power to make such a contract. G. L. c. 71, § 47A.

The school committee on December 13, 1965, by a vote of four in favor to three opposed voted to award to the plaintiff a contract as football coach for three years from December 31, 1965, at a salary of $3,000 for the first year and

$3,500 for the two succeeding years. Motions to reconsider failed of passage. In another vote the city solicitor was requested to draw up a contract and have it at the December 27, 1965, meeting. The city solicitor was in the hospital from December 21, 1965, to January 15, 1966. Charles Geary, a member of the majority, typed out a contract substantially in the form of the plaintiff's existing contract that was to expire August 31, 1966, except for the term, the compensation, and one omission,[1] and had the plaintiff sign it. The December 27 meeting was convened at the stated hour with the three dissenters in attendance. They adjourned the meeting at 8:20 P.M. for lack of a quorum with knowledge that at least some of the majority were then in the building but had not responded promptly to the mayor's notice that the meeting was in session. They knew that Geary was there and had the draft contract with him. About 8:20 P.M. the four members of the majority signed the contract form in the secretary's office "where we sign most contracts." One copy of the contract was given to the plaintiff, one went to the office of the superintendent of schools and one to the city hall records. There was newspaper notice of the purported contract "sometime after the meeting of December 27."

We hold that no contract was made. The engagement was dependent upon the drafting and submission to the committee, and its approval, of a formal contract. The December 13 votes were not in themselves an offer which the plaintiff could accept. *Benton* v. *Springfield Young Men's Christian Assn.* 170 Mass. 534, 537. *Vinal* v. *Nahant,* 232 Mass. 412, 420. See *Conlon* v. *Lawrence,* 299 Mass. 528, 530–531. Compare *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Mfg. Co.* 202 Mass. 177, 182; *Duggan* v. *Matthew Cummings Co.* 277 Mass. 445, 449–450; Restatement 2d: Contracts (Tent. draft No. 1, 1964) § 26. Com-

---

[1] In the draft the words "in the opinion of the [s]chool [c]ommittee" were omitted from the statement of the duty to "devote such time and effort as may be necessary [omission at this point] for the proper performance and discharge of his duties hereunder."

pare *McManus* v. *Boston,* 171 Mass. 152, 156, where the vote of a public body imported a contract by its own terms.

Geary and his associates of the December 13 majority were without authority to determine for the committee the contract terms or to submit any document or offer of contract to the plaintiff. It may not be inferred that counsel would have recommended or the committee would have approved Geary's draft, or a contract like the existing contract.

We recognize that parliamentary tactics have operated to defeat the basic intention of the committee, at least as constituted in December, 1965. That circumstance cannot, however, operate to change rules of law.

The final decree is reversed. A decree is to enter in accordance with this opinion.

*So ordered.*