**CONTINENTAL LABORATORIES, INC., Plaintiff,**

v.

**SCOTT PAPER COMPANY, Defendant.**

**Civ. No. 88–184–B.**

United States District Court,
S.D. Iowa,
Central Division.

March 23, 1990.

David S. Wiggins, West Des Moines, Iowa, for plaintiff.

Mark Schantz, Des Moines, Iowa, for defendant.

RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF DISMISSAL

VIETOR, Chief Judge.

The court has before it defendant Scott Paper Company's (Scott) motion for sum-

mary judgment. Plaintiff Continental Laboratories, Inc., (Continental) has resisted and oral arguments have been heard.

## BACKGROUND

### A. Facts

During early 1987, representatives of Continental and Scott[1] entered into negotiations concerning a potential supply and distribution agreement whereby Continental would supply hotel amenity products[2] to Scott and Scott would distribute the products within designated areas of the United States. In the course of negotiations, the parties also discussed the possibility of a partial or total acquisition of Continental by Scott, but this possibility was not pursued to fruition. Beginning in May, 1987 and continuing throughout the negotiations period, Scott representatives prepared at least five drafts of a written Supply and Distribution Agreement, which they submitted to Continental. Each new draft incorporated changes which had resulted from negotiations about the prior draft and the subsequent revised draft then became the basis for further negotiations.

On July 19, 1987, Scott, through Jim Smith, announced internally that Scott and Continental had reached a supply and distribution agreement in principle. Plaintiff's Index, Tab 18. The parties' representatives exchanged phone calls and participated in numerous meetings between July 29 and August 26, 1987. Mr. Krislov's affidavit and deposition testimony show that Continental representatives believed that a binding oral contract was reached by the parties during a telephone conference call on either August 25 or 26, 1987, between Krislov, Hirsch, Smith, and Steve Ford, Scott's legal counsel. Plaintiff's Index, Tab 1, pg. 1 and Tab 4, pgs. 15–16.

Continental, through Krislov, further believed that Scott representatives would reduce the terms of the allegedly binding oral contract to written form in a document entitled "Supply and Distribution Agreement", as a memorial of the contract. Plaintiff's Index, Tab 1, pg. 1. Mr. Smith's affidavit, on the other hand, demonstrates that Scott through Smith never intended to be bound by an oral agreement, but only by a written contract executed by both parties. Defendant's Supporting Materials, Smith Affidavit, pgs. 1–2.

Scott representatives sent Continental representatives a copy of a written "Supply and Distribution Agreement" which bears the stamp "DRAFT" and the stamp "REC'D SEP 02 1987". Plaintiff's Index, Tab 8. It is believed that Continental employees placed the "REC'D" stamp on the document when they received the copy on September 2, 1987, but the origin of the "DRAFT" stamp is not known for certain. Plaintiff's Index, Tab 4, pgs. 17–18. The September 2nd document contains a space for the "Commencement Date", which the Scott representatives left blank. Although the September 2nd document contains a signature page showing Scott vice-president P.N. White's signature, no officer of Continental ever signed the document.

After Continental representatives received the September 2nd document, the parties' representatives conducted meetings on September 9th and 10th to further discuss implementation of the venture. Subsequent to these meetings, Mr. Smith, on behalf of Scott, prepared a revised copy of the "Supply and Distribution Agreement", which he presented to Mr. Krislov at O'Hare Airport in Chicago. On September 16, 1987, the parties' representatives met in Madrid, Iowa. During the September 16th meeting, Mr. Smith informed the Continental representatives that Scott was no longer interested in the venture and he

1. The individuals who represented Continental were: 1. Clinton A. Krislov, who has a legal degree and is also chairman of the board for Continental, 2. David Bequeaith, Continental's vice-president of operations, and 3. Austin Hirsch, legal counsel for Continental. Mr. Hirsch became involved in the negotiations in July, 1987. James Smith, Scott's Director, New

Business Development, was the primary representative for Scott.

2. Hotel amenity products consist of the complimentary, personal sized, health and beauty products that are often provided by hotels to their patrons, ie: shampoo, bath gel, hand lotion, bar soap, shower caps, shoe polishing cloths, etc.

terminated the meeting and any further discussions regarding the proposed venture.

### B. Proceedings

Continental filed suit against Scott in the Iowa District Court for Boone County, alleging that the parties had entered into a final and binding, oral contract during the August telephone conference and that Mr. Smith's actions on September 16, 1987 constituted a breach of that contract by Scott. On April 6, 1988, defendant Scott removed the action to this court on the basis of diversity of citizenship jurisdiction.[3] Defendant Scott has moved for summary judgment on the ground that there was no binding contract. Alternatively, Scott argues that even if there was a binding contract, it contained a condition precedent to Scott's performance, which Continental never fulfilled and Scott properly canceled the contract.

### SUMMARY JUDGMENT STANDARD

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case on which it has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage,* 837 F.2d 836, 838 (8th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf,* 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving party must produce is not precisely measurable, but "the nonmoving party must produce enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Johnson,* 669 F.Supp. at 295–96.

On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and that party must also be given the benefit of all reasonable inferences to be drawn from the facts. *Trnka v. Elanco Products Co.,* 709 F.2d 1223, 1225 (8th Cir.1983); *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir.1981).

### DISCUSSION

■ Under Iowa law, a binding oral contract may exist even though the parties intend to memorialize their agreement in a fully executed document. *Elkader Coop. Co. v. Matt,* 204 N.W.2d 873, 875 (Iowa 1973); *Severson v. Elberon Elevator, Inc.,* 250 N.W.2d 417, 421 (Iowa 1977). On the other hand, the parties can make the execution of a written document a condition precedent to the birth of a binding contract. *Elkader,* 204 N.W.2d at 875; *Emmons v. Ingebretson,* 279 F.Supp. 558, 566 (N.D. Iowa 1968). If either party intends not to be bound in the absence of a fully executed document, no amount of negotiation or oral agreement as to specific terms will result in the formation of a binding contract. *Severson,* 250 N.W.2d at 420; *Marti v. Ludeking,* 185 N.W. 476, 477–78 (1921). *See* Restatement (Second) of Contracts § 27 comment b (1981).

■ It is the parties' intent which will determine the time of the contract formation. *Emmons,* 279 F.Supp. at 566. Plaintiff contends that the parties, through their representatives, intended to and did enter into a binding oral contract on August 25 or 26, 1987, during a telephone conference call. Defendant, however, argues that it never intended to be bound until the parties had fully executed a written contract. The court must determine the intent of the parties objectively from their words and actions viewed within the context of the situ-

---

**3.** In this diversity of citizenship case, Iowa law governs the substantive issues.

ation and surrounding circumstances. *Fairway Center Corp. v. U.I.P. Corp.*, 502 F.2d 1135, 1141 (8th Cir.1974).

In ascertaining whether the parties intended to be bound prior to execution of a written document, the court should consider the following factors: 1. whether the contract is of a class usually found to be in writing; 2. whether it is of a type needing a formal writing for its full expression; 3. whether it has few or many details; 4. whether the amount is large or small; 5. whether the contract is common or unusual; 6. whether all details have been agreed upon or some remain unresolved; and 7. whether the negotiations show a writing was discussed or contemplated. *Emmons*, 279 F.Supp. at 572, *cited in, Severson*, 250 N.W.2d at 421. *See* Restatement (Second) of Contracts § 27 comment c (1981). After considering these factors in the context of this case, I conclude that the summary judgment record lacks sufficient evidence from which it could be found that Scott intended to be bound in the absence of an executed written contract.[4]

Factors 1 and 2 support Scott's position. The matter was a large and complex commercial undertaking, which is usually put into written form. The parties, who were both represented by legal counsel, negotiated for over seven months and exchanged numerous drafts of a written proposed agreement. Mr. Smith, Scott's representative, stated in his affidavit that he considered the potential relationship with Continental to be a significant matter and that it was Scott's and his own custom and practice to require all significant business agreements to be in writing. The written Agreement does not mention the August 26th phone conference nor does it contain any language which indicates that it is a written memorial of an oral contract. It does, however, contain a clause which states: "[e]xcept as specifically provided herein, this Agreement and the Exhibits hereto reflect the complete agreement of the parties and there are no other agreements or understandings applicable hereto."

Similarly, factors 3, 4, and 5, support Scott's contention. First, the 12 page contract contains many details and references numerous exhibits. The Agreement addresses such issues as exclusivity of distributorship, products and services supplied, pricing, purchase commitment, payment terms, advance payments, confidentiality, and termination. Additionally, the Agreement references a related agreement between Continental and Redken. Second, the transaction at issue involves a commitment by Scott to purchase a minimum of $2.25 million worth of products from Continental during the term of the contract. Lastly, although supply and distribution agreements are fairly common in the commercial world, this particular contract was unusual for Scott because it involved Scott's entrance into a new market.

Under factor 6, although Mr. Smith announced internally to Scott officials that the parties had reached an agreement in principle in July, 1987, many details were still unresolved. Even after the August telephone conference and the exchange of the September 2nd written agreement, the parties held several meetings in September, 1987, to finalize all of the details regarding manufacture and distribution of the products. On September 14, Mr. Smith even presented Mr. Krislov with another revised draft of the agreement, which Mr. Krislov accepted grudgingly. This evidence suggests that Scott, through Smith, did not consider that there was a final and binding oral agreement.

Finally, an analysis of the summary judgment record under factor 7 also supports Scott's position that it intended to be bound only by a written and executed contract. During the negotiations, the parties had exchanged drafts of proposed written agreements. Also, Scott representatives had left the space for the Commencement Date of the September 2nd Agreement blank, suggesting that they did not consider August 26th to be that date. In the Agreement itself, the parties required that

---

**4.** For purposes of this motion, the court assumes that Continental intended to be bound by the August oral agreement.

modifications, amendments, terminations, territorial expansions, etc., would all require a writing. *See* Exhibit A to Complaint, pgs. 2, 4, 8, 9, 10, 11, and 12. It would be strange for Scott to require written modifications without first contemplating a written contract.

Based upon the preceding analysis of the relevant factors, I conclude that Continental has failed to overcome Scott's summary judgment motion. Continental has failed to generate a genuine issue of material fact regarding whether Scott intended to be bound by an oral agreement or only by a written and executed agreement. The summary judgment record shows that, based upon all of the circumstances, Scott communicated its intent to be bound only by a written contract, signed by both parties. No such contract ever existed. Therefore, defendant's motion for summary judgment IS GRANTED.

## ORDER

IT IS ORDERED that plaintiff's complaint be dismissed.