James L. CHIPOKAS, Appellant,

v.

Steven J. HUGG, Julie A. Hugg, James R. Hugg and Jacjenn Ltd., an Iowa Corporation, Appellees.

No. 90–1833.

Court of Appeals of Iowa.

Sept. 24, 1991.

Kelly R. Bairer and Melissa Weets Anderson of Bradley & Riley, P.C., Cedar Rapids, for appellant.

Timothy D. Roberts of Anderson, Roberts & Roth, Burlington, for appellees.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

James Chipokas, an attorney, is the owner of commercial property in Cedar Rapids, Iowa. In 1988 Steven Hugg and field representatives of TCBY Yogurt viewed various locations in the Cedar Rapids area as potential sites for a retail TCBY store to be operated by the Huggs' family corporation, Jacjenn, Ltd. One potential site was the property owned by Mr. Chipokas. On November 9, 1988, Steven Hugg, his wife, and his parents met with Mr. Chipokas and a real estate agent, Tom Zachar, to inquire about the Chipokas property. The Huggs suggested leasing the existing building and remodeling it for a TCBY Yogurt Store. Steven Hugg hired a general contractor to prepare an estimate for remodeling the existing building only to learn the costs would be prohibitive.

In May 1989 Mr. Zachar contacted Steven Hugg to determine whether the Huggs would be interested in leasing the property if a new building was built. The Huggs expressed their interest and met with an architect hired by Mr. Chipokas. At this meeting the architect showed the Huggs proposed drawings for the property consisting of a three-bay strip mall center. These drawings had been prepared by the architect prior to the meeting.

Mr. Chipokas subsequently submitted a "Proposal to Lease" which Steven Hugg and his wife signed on May 25, 1989. The proposal identified the premises, square footage of the building to be constructed, period of the lease, monthly rent, and options for renewal. The proposal explicitly stated it was "conditional upon a final lease acceptable to both Lessee and Lessor and the plans and specifications also acceptable to both parties."

On May 30, 1989, Mr. Chipokas provided the Huggs a forty-paragraph lease he had drafted for their review. After reviewing the lease, the Huggs submitted a document entitled "Points for Clarification and Negotiation" to Mr. Chipokas. Most items were acceptable to all parties; however, three were not. The unacceptable items included whether the lease should contain an indemnity provision, a provision requiring the tenant to pay for building repairs, and a provision giving the landlord a lien over the tenants' property on the premises. Because the parties could not resolve their differences over these items, the forty-paragraph lease agreement was never signed.

Mr. Chipokas sued the defendants for breach of an oral lease, breach of a written agreement to lease, and on the theory of promissory estoppel. At the hearing, the parties stipulated there was no oral lease. In addition, the Huggs moved for summary judgment, asserting no enforceable contract was ever reached because the parties failed to agree to the contract terms. The Huggs also argued promissory estoppel should not apply because Mr. Chipokas had hired the architect before the parties negotiated and signed the proposal to lease.

The district court concluded the proposal to lease was not a contract giving the parties enforceable rights. Because there was no clear and definite written or oral agreement, the court held promissory estoppel did not apply. Accordingly, the district court granted summary judgment in favor of the defendants.

Mr. Chipokas appeals claiming the proposal to lease and surrounding circumstances establish an issue of material fact as to (1) whether the parties intended to create binding contractual obligations, (2) whether the parties were obligated to bargain in good faith on the open terms of the lease, and (3) whether he is entitled to recover on the theory of promissory estoppel.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The burden of proving the nonexistence of a material fact is on the moving party. *Milne,* 424 N.W.2d at 423. Our court must review the evidence in the light most favorable to the resisting party. *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Id.*

■ Although Mr. Chipokas first contends the parties intended the proposal to lease to constitute a final binding lease agreement, the record reveals the proposal was merely preliminary negotiations. Whether preliminary negotiations actually ripen into a contract depends on the intention of the parties. *Severson v. Eleberon Elevator, Inc.,* 250 N.W.2d 417, 421 (Iowa 1977).

> Factors to consider in seeking to ascertain whether parties intend to be bound prior to executing a written document include whether the contract is of a class usually found to be in writing, whether it is of a type needing a formal writing for its full expression, whether it has few or many details, whether the amount is large or small, whether the contract is common or unusual, whether all details have been agreed upon or some remain unresolved, and whether the negotiations show a writing was discussed or contemplated.

*Id.*

Because this was a commercial lease of real estate, it is of a class usually found to be in writing. The subject matter needed a formal writing for its full expression and consisted of many details evidenced by the forty-paragraph lease agreement. The final details were not agreed upon as the proposal to lease specifically stated it was *conditional* upon a final lease acceptable to both parties. At least three of the con-

tract terms were not resolved as evidenced by the points for clarification and negotiation. Finally, the forty-paragraph lease agreement was prepared by Mr. Chipokas subsequent to the proposal to lease which shows the parties intended to negotiate a formal written lease. In light of these findings, we agree with the district court's determination the document on which Mr. Chipokas relied to support his claim for breach of contract was exactly what it purported to be—a proposal. As such, the document was not a contract giving the parties enforceable rights. Because Mr. Chipokas did not present any evidence to raise a factual issue for trial, the district court properly granted the Huggs' motion for summary judgment on this issue.

Mr. Chipokas also contends the proposal to lease was enforceable as a mutually binding obligation to negotiate in good faith. Because this claim was not pled or argued at the district court, the issue may not be raised for the first time on appeal. *Conner v. State,* 362 N.W.2d 449, 457 (Iowa 1985).

■ Mr. Chipokas also asserts he is entitled to recover on the theory of promissory estoppel. The elements of promissory estoppel are: (1) a clear and definite agreement, (2) proof the party seeking to enforce the agreement reasonably relied upon it to his detriment, and (3) a finding that equity supports enforcement of the agreement. *Citizens First National Bank of Storm Lake v. Turin,* 431 N.W.2d 185, 186 (Iowa App.1988). Based on the proposal to lease, the district court concluded no clear and definite agreement, written or oral, had been reached by the parties.

Mr. Chipokas alleges the trial court held him to the standard of proving a clear and definite agreement in the sense of a completed contract. A review of the record, however, does not support this allegation.

Although no Iowa case has squarely defined a clear and definite agreement, the first element of promissory estoppel, in *National Bank of Waterloo v. Moeller,* 434 N.W.2d 887, 889–90 (Iowa 1989), our supreme court compared and distinguished three cases interpreting this element. *Id.*

(discussing *In re Estate of Graham,* 295 N.W.2d 414, 418–19 (Iowa 1980); *Johnson v. Pattison,* 185 N.W.2d 790, 795–97 (Iowa 1971); *Miller v. Lawlor,* 245 Iowa 1144, 1151–57, 66 N.W.2d 267, 272–75 (1954)). The court in *Moeller* determined the first element was satisfied in *Miller* and *Pattison. Id.* at 889. The court found "a clear understanding by the promisor that the promisee was seeking an assurance upon which he could rely and without which he would not act." *Id.* A similar finding could not be made in *Graham. Id.* "This dual emphasis on clarity and inducement parallels the Restatement·(Second) definition of an agreement for purposes of promissory estoppel as '[a] promise which the promisor should reasonably expect to induce action ... on the part of the promisee.'" *Id.* (quoting Restatement (Second) of Contracts § 90 (1981)).

In the present case, Mr. Chipokas asserts by way of the proposal to lease, he was seeking an assurance upon which he could rely and he did so rely by preparing plans and specifications. According to Mr. Chipokas, Steven Hugg understood the proposal was intended to create obligations upon which Mr. Chipokas would rely.

Whether we focus solely on the words of the proposal or consider its meaning in the surrounding circumstances, we are unable to find a clear and definite agreement the Huggs would reasonably understand to induce action. The language of the proposal to lease was decidedly conditional, not definite. The "entire proposal [was] conditional upon a final lease acceptable to both Lessee and Lessor and plans and specifications also acceptable to both parties." Some details in the proposal were left for future negotiation.

Given these undisputed facts, it is unreasonable to find Mr. Chipokas was induced to act by the proposal to lease or surrounding circumstances. Mr. Chipokas may have sought a written commitment to lease the property, but he did not get one. Therefore, we affirm the district court on this issue.

Costs of appeal are taxed to Chipokas.

AFFIRMED.