**Gerald T. BRADLEY, Appellant,**

v.

**WEST SIOUX COMMUNITY SCHOOL BOARD OF EDUCATION; and Jan Cain, Sue Gregg, and Pat Deboer, Individually, Appellees.**

No. 93–26.

Supreme Court of Iowa.

Jan. 19, 1994.

Charles F. Knudson of Knudson & Brady Law Firm, Marcus, for appellant.

Timothy J. Walker and Thomas R. Pospisil of Whitfield & Eddy, P.L.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The question in this case is whether an alleged oral agreement is enforceable to extend an existing contract between a superintendent and a school board.

The district court ruled that under the requirements of Iowa Code sections 279.23 and 279.24 (1991) the alleged oral contract was not enforceable. We agree and affirm.

I. *Background facts and proceedings.* Plaintiff Gerald T. Bradley was employed since 1974 by the West Sioux Community School District as superintendent. His employment contracts with the district were for

one-year terms. Sometime prior to July 1, 1990, Bradley and the school board entered into a validly executed, written employment contract for the 1990–91 school year under which Bradley's next term of employment would commence July 1, 1990 and would remain effective for one year.

In March 1991 the school board had begun to question whether it wished to retain Bradley as superintendent. Although Bradley only had a one-year contract, the board could not simply wait for the contract to expire. Iowa Code section 279.24 automatically extends contracts with school administrators (like Bradley) "for one year beyond the end of its term, except as modified or terminated by mutual agreement . . . or until terminated as hereinafter provided."

In short, to prevent Bradley from continuing as superintendent into the 1991–92 school year, the school board had to terminate his statutorily extended contract either by mutual agreement or through the termination process set out in section 279.24. On March 26, 1991, the board embarked upon the latter route. The board voted to consider termination of Bradley's contract. By letter, the board served Bradley with a notice of consideration to terminate his employment. Pursuant to section 279.24, Bradley asked that an administrative law judge (ALJ) be appointed to decide whether the board should dismiss him. Bradley and the school board selected attorney Gaylen Hassman to serve as the ALJ to preside over the termination proceedings. Hearing before the ALJ was set for May 13, 1991.

Although the school board apparently wanted to prevent Bradley from succeeding to another one-year term, the termination proceedings under section 279.24 threatened to become protracted and expensive. Therefore, the board expressed a desire to negotiate a possible settlement with Bradley.

During an emergency meeting on May 11, the board and Bradley entertained a proposal from Bradley that, among other things, would have extended Bradley's contract for one year (that is, into the 1991–92 school year) and would have provided for a review of Bradley's performance by an outside consultant hired by the board. Richard Smith,

counsel for the board, and Charles Knudson, counsel for Bradley, initialed this proposal, apparently to acknowledge that the parties had considered it. The parties also made several notations to the proposal that added, omitted, and changed or left open certain provisions.

The May 13 meeting appeared to signal an end to the dispute. According to the minutes of the board, the parties "agreed to accept [Bradley's proposal] with various additions and changes." They also made the following joint press release:

> The West Sioux Board of Education and Superintendent Gerald T. Bradley have worked very hard during the past few weeks to resolve all of the issues surrounding the superintendent's contract and have resolved the issues in the best interests of the District.

> A formal agreement is being prepared by the School District attorney for submission to the parties prior to May 21, 1991 which addresses all issues and will be available for public inspection after approval.

The administrative law judge granted the parties' motion to continue the termination hearing to allow the parties to finalize the settlement agreement.

On May 15, 1991, the attorney for the school board presented the board, Bradley, and Bradley's counsel with a draft agreement that the attorney believed incorporated the terms of Bradley's proposal. The board took no action on this draft agreement at that meeting. Instead, board members Jan Cain, Pat DeBoer, and counsel for the board discussed the language of the draft agreement with James C. Hanks, a Sioux City attorney.

This review led the board to make two significant changes to the draft agreement. The first change gave the board exclusive power to select the "outside consultant" that Bradley had mentioned in his proposal to the board. The second change provided that if, at the regular December meeting, the board asked for Bradley's resignation, Bradley's failure to submit his resignation as provided by the agreement would be "cause for termination" of his contract.

On May 16 the board, voting 3–2, adopted this version of the agreement. Board president Jan Cain executed the agreement, thereby offering Bradley an extension of his contract under the conditions therein. Bradley rejected this offer on the ground that the revised agreement gave too much discretion to the board. The board subsequently rescinded the agreement by unanimous vote on May 28, 1991.

Bradley and the school board subsequently filed a stipulation of dismissal with prejudice of the section 279.24 termination proceedings before the ALJ.

Alleging that an enforceable oral agreement existed as a result of the conclusions reached at the May 15 board meeting, Bradley brought an action seeking damages from the school board, board president Cain, and board members Pat DeBoer and Sue Gregg. He also filed a petition in equity seeking to compel the school board to perform the alleged oral contract. These actions were consolidated.

The defendants filed a motion for summary judgment on Bradley's claims, contending that no enforceable agreement existed because the oral contract alleged by plaintiff was subject to finalization in writing and approval by both parties pursuant to the understanding of the parties at the time of the negotiation and pursuant to section 279.23, which requires that all contracts with administrators be in writing, signed by the parties, and filed with the board secretary before the superintendent may enter upon performance of the contract. The court granted the motion, and Bradley appealed.

Our review of an order granting summary judgment is for correction of errors of law. Iowa R.App.P. 4. To sustain a motion for summary judgment, the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, must show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991).

■ II. *Existence of an enforceable oral agreement.* Bradley contends that at the board meeting of May 13, 1991, the parties entered into a binding *oral* agreement to extend his contract into the 1991–92 school year. The district court rejected this claim, concluding that because Bradley failed to prove the existence of a written contract as required by section 279.23, the defendant school board was entitled to judgment as a matter of law.

Iowa Code section 279.23 provides that employment contracts with school administrators must be in writing, signed by the president of the school board and the administrator, and filed with the secretary of the board before the administrator enters upon performance of the contract. Section 279.23 also states an administrator's contract shall be governed by that section and section 279.-24.

■ A. An oral contract is unenforceable where a statute requires it to be in writing. *Milholin v. Vorhies*, 320 N.W.2d 552, 554 (Iowa 1982); *Krutsinger v. School Township of Liberty*, 219 Iowa 291, 294, 257 N.W. 797, 798 (1934). In *Krutsinger* we rejected a school teacher's claim of "an alleged oral extension of the terms of the written agreement" that the teacher had with the school board. *Id.* at 293, 257 N.W. at 798. Under section 4229 of the Code of 1931, a predecessor to Iowa Code section 279.12, "[c]ontracts with teachers must be in writing ... [and shall be] signed by the president and teacher, and shall be filed with the secretary before the teacher enters upon performance of the contract." Applying that statutory requirement, we concluded that "[a]n oral extension of the terms of the contract would necessarily apply to a term to be taught which, under the statute, must be in writing." *Id.* at 294, 257 N.W. at 798.

Section 279.12 of the current code contains the writing requirement that we applied in *Krutsinger*, and we believe that the reasoning of *Krutsinger* applies with equal force to the nearly identical writing requirement of section 279.23 concerning school administrators.

In *Milholin*, we noted that the purpose of a statutory writing requirement "is to prevent a party from being compelled, by oral

and perhaps false testimony to be held responsible for a contract he claims he never made." 320 N.W.2d at 554 (quoting *Green Mountain Realty, Inc. v. Fish,* 133 Vt. 296, 336 A.2d 187, 189 (Vt.1975)). We agree with the district court that the vagueness and difficulties encountered by the parties here exemplify the policy reasons behind writing requirements such as that of section 279.23.

B. Plaintiff cites *Dillon v. City of Davenport,* 366 N.W.2d 918, 925 (Iowa 1985), in which we held that a municipality could not rescind authority delegated to an attorney to settle a workers' compensation claim with a city employee. The city's attorney and the claimant's attorney had drafted a settlement agreement that the city later refused to honor, even though the city had granted its lawyer specific authority to settle within the amount under the agreement. *Id.* at 920–21. The city argued that because it had not provided written approval of the settlement, the agreement did not satisfy the requirement under Iowa Code section 85.35 (1983) that a settlement of a workers' compensation claim be in writing for presentation to the industrial commissioner for approval. *Id.* at 921.

We rejected the city's argument, refusing to allow the city to avoid its obligation under the settlement agreement merely on the grounds that the city council had not approved of the agreement in writing. *Id.* at 925–26. Section 85.35 requires that an already valid settlement agreement be reduced to writing so that the industrial commissioner can determine whether the settlement meets the criteria of section 85.35(1)–(8). *See id.* at 926.

Unlike the city in *Dillon,* however, the defendant school board here never delegated its authority to anyone to settle Bradley's contract. Although attorney Richard Smith represented the board, the board never gave him or anyone else authority to make Bradley an offer. The board or some of its members were directly involved in conversations with Bradley concerning the proposed contract extension. The formal contract document had yet to be prepared and agreed upon by the parties after finalizing certain provisions left open on May 13.

C. The other jurisdictions that have addressed the issue have followed our interpretation that the writing requirements in educator contracts should be strictly enforced. *See, e.g., Johnson v. Wert,* 225 Ark. 91, 279 S.W.2d 274, 276 (1955) ("The election of appellant for a new two-year term ... was merely preliminary to the further requirement that a valid written contract in the form prescribed ... be executed."); *Morton v. Hampton Sch. Dist. No. 1,* 16 Ark.App. 264, 700 S.W.2d 373, 375 (1985) (quoting *Johnson* ); *Konovalchik v. School Comm. of Salem,* 352 Mass. 542, 226 N.E.2d 222, 223 (1967); *Minor v. Sully Buttes Sch. Dist. No. 58–2,* 345 N.W.2d 48, 50 (S.D.1984) ("Since neither the president of the school board nor the business manager of School District signed the document in question, we must conclude that no contract came into existence.").

D. Even apart from a statutory writing requirement, the enforceability of an alleged oral contract may turn on whether the parties intended to reduce the contract to writing. "When the terms of an agreement are definitely fixed so that nothing remains except to reduce them to writing, an oral contract will be upheld unless the parties intended not to be bound until the agreement was reduced to writing." *Severson v. Elberon Elevator, Inc.,* 250 N.W.2d 417, 420 (Iowa 1977).

In *Severson* we stated that factors to be considered in determining whether an oral contract will be upheld include whether the contract is of a class usually found to be in writing, whether it is of a type needing a formal writing for its full expression, and whether all details have been agreed upon or some remain unresolved. *Id.* at 421.

The terms here were not definitely fixed and show the policy wisdom of the requirements of section 279.23. For example, next to paragraph 3 of Bradley's May 13 proposal, which contained a clause that the parties would conduct themselves in good faith and would hire an outside consultant to consider the fairness of the management plan, was the notation "Board will consider." Further, the minutes of the May 13 meeting and the press

release contained therein stated that a formal agreement was being prepared for submission to the parties prior to May 21 and would be available to the public *after* approval. The parties had reached the end of a round of preliminary negotiations; they had not yet expressed an intent to be bound. Bradley's May 13 proposal and the many handwritten notations sketched on it were only a framework for a full, detailed contract that would· be drafted, reviewed, hopefully agreed upon, and finally signed by Bradley and president Cain for the board, all pursuant to the requirements of section 279.23.

Bradley's appeal and the statements in his briefs rest on the theory that he had an oral contract, yet he relies on his May 13 proposal and the handwritten notes thereon as evidence of its terms. We think the proposal, with the sketched-in variations, is too vague to be enforced. In paragraph 1, for instance, Bradley proposed a 5% salary increase. Someone else, however, circled that proposal and wrote "No" above it; this kind of mark seems too tentative to be enforceable. The notation "Board will consider" at the end of paragraph 3 also indicates that the terms were not definitely fixed. Finally, at the bottom of the May 13 proposal, the parties had added in handwriting entirely new terms with blanks interspersed, further suggesting that they had yet to arrive at a binding agreement.

E. We note that Bradley's request pursuant to section 279.24 for a hearing before an ALJ to determine whether he should be terminated was still pending; Bradley could have chosen to have the hearing at any point during the contract negotiations or thereafter. Thus, he never gave up any rights under section 279.24 by participating in the contract negotiations that led to this litigation. Bradley simply chose to pursue this oral contract theory rather than the remedy provided by statute to contest his termination.

III. *Alleged oral agreement as modification of existing contract.* Bradley alternatively contends that the oral agreement constituted a modification of his one-year employment contract that commenced on July 1, 1990. He notes that section 279.24 mandates that the existing contract continues automatically for one year unless the parties settle the case by a modified mutual agreement or unless the board proceeds to terminate the administrator. Bradley asserts that the board did not intend to terminate him and therefore must have either wished to modify the contract or let the 1990 contract automatically renew.

The district court, resting its ruling on Bradley's failure to show that an enforceable contract existed agreed to by the parties and under the requirements of section 279.23, did not discuss this issue.

We find no merit in Bradley's alternative contention. Section 279.23 states that an administrator's contract shall also be governed by the provisions of section 279.24. We believe that this means that the two sections must be read together. The corollary result is that any modification by mutual agreement of plaintiff's existing 1990–91 contract under section 279.24 must meet the writing and approved signature requirements of section 279.23 before the administrator enters upon performance of the new contract.

IV. *Disposition.* We conclude the parties did not have an enforceable modification or extension of Bradley's 1990–91 contract. The ruling of the district court is affirmed.

**AFFIRMED.**