Walter NEELY and Loretta
Neely, Plaintiffs,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant.

No. C 94–4120 MWB.

United States District Court,
N.D. Iowa,
Western Division.

May 29, 1996.

Robert Darling of Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, Michigan, and by William J. Giles, III, Giles Law Office, Sioux City, Iowa, for Plaintiffs Walter and Loretta Neely.

Michael R. Hellige of Shull, Cosgrove, Hellige & Lundberg, Sioux City, Iowa, for Defendant American Family Mutual Insurance Company.

## ORDER REGARDING DEFENDANT'S MOTION PURSUANT TO F.R.C.P. 50(b) AND MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59 AND PLAINTIFFS' MOTION, IN THE ALTERNATIVE, FOR NEW TRIAL

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 362
 A. Factual Background................................................ 362
 1. Walter's status with the Church ........................... 362
 2. The accident and the Church's insurance coverage ..................... 363
 3. The Neelys' suit against the Church ................................ 364
 B. Procedural History................................................ 364
 1. The present lawsuit .......................................... 364
 2. The cross-motions for summary judgment ........................... 365
 3. Jury trial................................................... 365
 4. Post-trial motions .......................................... 366
II. LEGAL ANALYSIS ....................................................... 366
 A. American Family's Post–Trial Motion Pursuant to Fed.R.Civ.P. 50(b) ......... 366
 1. Applicable standards......................................... 366
 a. Procedural requirements ................................... 367
 b. Evidentiary standard......................................... 368

362

 2. The Neelys' promissory estoppel claim under Iowa law .................. 369
 a. The "clear and definite agreement" requirement .................... 371
 b. Evidence of the agreement here ................................ 373
 i. Clarity ............................................... 374
 ii. Inducement ........................................... 375
 3. Summary ........................................................ 375
 B. American Family's Post–Trial Motion Pursuant to Fed.R.Civ.P. 59 ........... 376
 C. The Neelys' Motion For New Trial ...................................... 376
III. CONCLUSION ................................................................. 377

Perhaps just as important as the right of trial by jury to the just disposition of disputes between parties in civil litigation is the right of the parties to seek post-trial scrutiny of the jury's verdict by the court. The Federal Rules of Civil Procedure provide, in proper circumstances, for relief from the jury's verdict, either by judicial entry of judgment as a matter of law or by order for new trial. In this case, both parties have availed themselves of the court's power of post-trial scrutiny of the jury's verdict. The defendant insurance company, disappointed by a jury verdict finding that promissory estoppel precluded its assertion of policy exclusions to deny coverage, seeks either judgment as a matter of law or a new trial. The plaintiffs, a former pastor injured in a church boiler explosion and his wife, also seek a new trial in the event the court decides to grant the insurance company's post-trial motions. The court must, in the first instance, determine whether sufficient evidence supports the jury's verdict and, in the second, whether the jury's verdict is against the greater weight of the evidence.

## I. INTRODUCTION AND BACKGROUND

This post-trial opinion follows a jury verdict for the plaintiffs, Walter and Loretta Neely, on the Neelys' claim of promissory estoppel against the defendant, American Family Mutual Insurance Company ("American Family"). The Neelys' lawsuit stems from an accident on May 4, 1991, in which Walter Neely sustained serious and permanent injuries while attempting to light the boiler in the basement of the Christian Life Fellowship Church ("the Church"). American Family was the liability insurer for the Church, but it refused to defend the Church in the Neelys' lawsuit against the Church ("the underlying lawsuit"), alleging that an exclusion in the Church's insurance policy precluded coverage for Walter Neely, because he was an executive officer or director of the Church at the time of the accident, performing an act within the scope of his duties as an executive officer or director in lighting the boiler at the Church. The Neelys ultimately obtained a default judgment against the Church which established that the Church is liable to the Neelys for the injuries they sustained as a result of the boiler explosion. Subsequently, the Neelys sued American Family for recovery of the default judgment, contending that American Family is estopped to assert the exclusion in the policy upon which its denial of coverage to the Church depended. To gain a better understanding of the nature of the Neelys' claims against American Family, it is helpful to discuss in greater detail the factual background of this litigation, including the Neelys' relationship with the Church, the Church's acquisition of its insurance policy from American Family ("the policy"), Walter Neely's accident at the Church, and the litigation that ensued as a consequence of the accident.

### A. Factual Background
### 1. Walter's status with the Church

Walter and Loretta Neely were two of three incorporators and directors of the Church and also worked as pastors at the Church. Until January 1990, Walter and Loretta each received a salary for their work as pastors and together received a housing allowance, along with payment for maintenance expenses, utility bills, telephone bills, and real estate taxes on their parsonage. On March 20, 1990, at Walter's request, the Church stopped paying Walter his salary. In a letter to the "Church Board of Christian Life Fellowship," dated February 13, 1991,

Walter explained the change in circumstances that led to the relinquishment of his salary.[1] In this letter, Walter conveyed to the Church board that although he was relinquishing his salary as pastor, he was not resigning as "Senior Pastor" or "Chairman of this local body." Likewise, the Church's minutes for the Church board meeting on March 24, 1991, reflect that Walter was not resigning as pastor or "corporate head" but was merely giving up his pastoral salary and housing benefits.

From March 20, 1990, to May of 1991, Walter Neely went to the Church every day, attended all Church services, and preached a total of three times. On days when no services were scheduled, Walter did paperwork for the Bible school of which Loretta was the director and did chores around the Church building.

### 2. The accident and the Church's insurance coverage

On May 4, 1991, Walter went to the Church at the request of Loretta in order to heat the Church building for services the following day. Walter found the building thermostats indicated a temperature of fifty degrees. Lighting the boiler was the only way to heat the Church, and Pastor Fred Moore, a director at the Church, had advised Walter that the boiler could be lit by manipulating the switches on the thermostats. Accordingly, Walter adjusted the thermostats to a setting of seventy degrees in order to start the building's boiler. The boiler subsequently exploded, severely injuring Walter.

At the time of this accident, the Church had a business liability policy with American Family. The insurance policy, policy number 14–X086686, contained an effective date from January 29, 1991, to January 28, 1992. However, Pastor Fred Moore, the individual who obtained the policy for the Church, contended that he never received the policy in its entirety. The policy Moore claims he received also bears the number 14–X086686; however, it covers the time period from December 10, 1986, to December 10, 1988, and consists of nothing more than a declarations page, a schedule of positions covered, and two endorsements which modified any insurance policy coverage then in place. The entire text of the body of the actual insurance policy is missing. Section II of the policy,[2] which Moore alleges was missing from the policy that he received, provided, in part:

> This section of the policy protects **you** and **your** business against claims that result from injury to others, or damage to others' property. Some words and phrases in this section appear in bold type. They have special meaning and are explained under Definitions. The word insured means any person or organization qualifying as such under WHO IS AN INSURED.

The policy subsequently defines an insured as follows:

1. The letter of February 13, 1991 provides as follows:

 > This is a letter of an informative nature which I feel must be entered into the church records for future reference and knowledge if so needed.
 > In March of 1990 I filed for my Social Security benefits to which I am entitled to receive at the age of 62. At that time I relinquished the salary and housing allowance benefits which were allocated to me.
 > Since Rev. Loretta Neely is co-pastor and associate pastor I had instructed the Secretary and Treasurer to continue giving her the full salary and housing allowance due to that position. This is in no way a letter of my resignation from being the Senior Pastor and Chairman of this local body. Please do not misinterpret this letter as such. I will still hold the offices as Senior Pastor and Chairperson of all func-

 > tions of the church as stated in Amended Article VII Pastor Section. 1. and Article VII Pastor Sections. 2 and 3. a, b, and c, Constitution and Bylaws of Christian Life Fellowship of Sioux City, Iowa.
 > It was through much prayer and thought that I made this decision. I am fully confident that this course of action and decision is very acceptable to you and the body of Christian Life Fellowship.
 > This course of action will enable us to continue on with the same staffing as we have had and thus not require any further financial undertaking for the Church body at this time.
 > Thank you for your continued support and much needed help in piloting this body in a deeper and richer life in our Lord.
 > American Family's Exhibit MM.

2. Section II of the policy is entitled "Business Liability And Medical Payments Insurance."

1. If **you** are shown in the declarations as:

. . . . .

 c. an organization other than a partnership or joint venture, **you** are an insured. **Your** executive officers and directors are insureds, but only with respect to their duties as **your** officers and directors. **Your** stockholders are also insureds but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

 a. **your** employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**. However, none of these employees is an insured for:

 (1) bodily injury or personal injury to **you** or to a co-employee while in the course of his or her employment, or . . . .

Section II of the policy also contains medical payments coverage of $5,000, but with the following exclusion:

**We** will not pay expenses for **bodily injury**:

 a. To any insured.

3. In their complaint in that matter, *Loretta Neely and Walter Neely v. Christian Life Fellowship Church, et al.*, C93–4043 (N.D.Iowa), the Neelys alleged, *inter alia*, that

 9. On May 4, 1991, while on the premises of CHRISTIAN LIFE FELLOWSHIP CHURCH, plaintiff, WALTER NEELY, did depress and actuate the relay controls on said furnace and shortly thereafter a gas explosion did occur and did cause said plaintiff to be propelled several feet against the basement wall.

 10. Defendant, CHRISTIAN LIFE FELLOWSHIP CHURCH, breached its duty owed to said plaintiff and was negligent in the following particulars, including but not limited to:

 (a) failing to assure that the proper replacement zone valve was installed on said furnace;

 (b) failing to exercise due care and caution to avoid creating and/or concealing dangerous and/or unsafe conditions on the premises;

 (c) failing to instruct and warn and/or make known to said plaintiff any hazardous and/or unsafe conditions;

### 3. The Neelys' suit against the Church

On May 23, 1993, the Neelys filed a lawsuit against the Church in the United States District Court for the Northern District of Iowa.[3] On April 6, 1993, a summons was served on Pastor Moore as the Secretary–Treasurer of the Church. The Neelys filed a request for default in the 1993 case on May 27, 1993. On November 23, 1993, the Honorable Donald E. O'Brien granted the Neelys' motion for default judgment against the Church. On November 23, 1994, this court entered judgment against the Church and in favor of Walter Neely in the sum of $712,-053.62. The court also entered judgment against the Church and in favor of Loretta Neely in the sum of $135,000.00.[4] The judgment against the Church remained unsatisfied.

### B. Procedural History

### 1. The present lawsuit

The court now turns to the procedural history of the present lawsuit. After obtaining a default judgment against the Church, which they were unable to satisfy, the Neelys brought this diversity action against American Family pursuant to Iowa Code § 516.1 to recover the unsatisfied judgment in the underlying lawsuit.[5] American Family filed a

 (d) failing to maintain its premises, in particular the furnace, in proper and safe working condition;

 (e) failing to make reasonable and regular inspections of the premises, in particular the subject furnace;

 (f) failing to hire and employ competent and skilled contractors to perform service on the above described furnace;

 (g) other acts and/or omissions which will be ascertained during discovery and which said plaintiff reserves the right to amend and incorporate herein.

Neelys' Complaint in C93–4043, ¶¶ 9 and 10.

4. Loretta's claims were solely for loss of consortium.

5. Iowa Code § 516.1 provides as follows:

 All policies insuring the legal liability of the insured, issued in this state by any company, association or reciprocal exchange shall, notwithstanding any other provision of the statutes, contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action by

timely answer in which it asserted that it had no duty to defend the Church or pay any judgment rendered against it on the ground that certain contractual provisions excluded the Neelys from coverage because they were deemed insureds under the policy.

### 2. The cross-motions for summary judgment

Both the Neelys and American Family moved for summary judgment. The Neelys claimed that the doctrine of collateral estoppel barred American Family from litigating its defenses in this action since it did not provide a defense to the Church in the underlying lawsuit. In its motion, American Family argued that Walter Neely was an insured, as defined under the policy, at the time of his accident, and as such, the exclusion under Section II of the policy barred the Neelys' recovery for Walter's injuries under the Church's policy.

On January 16, 1996, the court denied both parties' motions for summary judgment. The court denied the Neelys' motion, finding that the default judgment in the underlying lawsuit can have no preclusive effect on the suit between the Neelys and American Family.[6] Alternatively, the court found that even if the doctrine of collateral estoppel was applicable to default judgments, American Family was not collaterally estopped from litigating Walter's status with the Church in this case. In addition, the court denied American Family's motion for summary judgment, finding material issues of fact concerning Walter's role in the Church at the time of his accident. The court also concluded that a material issue of fact had been generated regarding whether the policy was ever received by the Church and, if not, whether the policy received by the Church in

a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment.
Iowa Code § 516.1 (1995).

6. The court concluded that default judgments are not given collateral estoppel effect because the issue in controversy has not been decided in an adversarial context. To have a collateral estop-

1987 contained the same limitations and exclusions found in the complete policy.

### 3. Jury trial

Trial by jury in this case began on April 9, 1996. At the conclusion of the Neelys' evidence, American Family made a motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b), and the court denied its motion. American Family renewed this motion at the conclusion of its own evidence on April 10, 1996, and the court took its motion under advisement. The case was submitted to the jury on the theories that (1) Walter Neely was not an officer or director of the Church acting within his duties as an officer or director when he was injured, and therefore he fell within the general coverage of the policy, not within any exclusion; (2) American Family was precluded by equitable estoppel from asserting the exclusions upon which it relied on the ground that it had concealed from the Church the actual coverage provided; and (3) American Family was precluded by promissory estoppel from asserting the exclusions upon which it relied on the ground that it provided coverage different from what it had promised.

On April 11, 1996, the jury returned a verdict in favor of the Neelys. Specifically, the jury found the following: (1) that Walter Neely was an executive officer or director of the Church on May 4, 1991; (2) that Walter Neely's actions were with respect to his duties as an executive officer or director of the Church; (3) that American Family did not "deliver" the complete insurance policy to the Church, as "delivery" is defined in Final Instruction No. 20, prior to the accident giving rise to this lawsuit; and (4) that American Family provided to the Church an insurance policy with terms contrary to promises.[7]

pel effect, an issue cannot simply be decided, but must be both actually litigated and decided. Although the court made findings in its granting of the default judgment, those were pro forma findings that were not actually litigated. Therefore, there can be no preclusive effect.

7. The jury found for the Neelys on the elements of their promissory estoppel claim, or as identified to the jury in a special interrogatory, the claim that American Family provided to the Church an insurance policy with "terms contrary

However, the jury found that the Neelys did not prove their claim of equitable estoppel, denominated in the jury instructions as "concealment of terms" of the Church's insurance policy.[8]

### 4. Post-trial motions

On April 17, 1996, American Family filed a renewed motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b). On that same date, American Family also filed a motion for new trial relative to the claims of Loretta Neely, pursuant to *Fed.R.Civ.P.* 59, on the ground that "there was sufficient evidence in the record to warrant a submission to the jury as to whether or not Loretta Neely was an executive officer or board member at the time of the accident and whether or not the accident and damages were relative to her duties as an officer or director." American Family's Mot. for New Trial, p. 1. On May 1, 1996, the Neelys resisted American Family's renewed motion for judgment as a matter of law and its motion for new trial. In their resistance to American Family's renewed motion pursuant to *Fed.R.Civ.P.* 50(b), the Neelys also filed an alternative motion for a new trial in the event the court decided to grant American Family's renewed motion for judgment as a matter of law.

The court heard oral arguments on American Family's post-trial motions on May 21, 1996. The Neelys were represented by Robert Darling of Sommers, Schwartz, Silver & Schwartz, P.C., in Southfield, Michigan, and by William J. Giles, III, Giles Law Office, in Sioux City, Iowa. American Family was represented by Michael R. Hellige of Shull, Cosgrove, Hellige & Lundberg in Sioux City, Iowa. With this extensive factual and procedural background in mind, the court turns to consideration of American Family's renewed motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b).

## II. LEGAL ANALYSIS

### A. American Family's Post-Trial Motion Pursuant to Fed.R.Civ.P. 50(b)

American Family has renewed its motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50. Before proceeding to the disposition of this motion, the court will first examine the standards for disposition of a motion made pursuant to *Fed.R.Civ.P.* 50(b).

### 1. Applicable standards

Federal Rule of Civil Procedure 50 provides for a post-trial motion for judgment as a matter of law, in relevant part, as follows:

(a) JUDGMENT AS A MATTER OF LAW.

---

to promises." Under Iowa law, the cause of action of promissory estoppel has three elements, defined, as applicable to this case, as: 1) a clear and definite agreement that the insurance policy provided by American Family to the Church would cover all Church employees as well as officers and directors; 2) proof that the Church acted to its detriment in reliance on the promised coverage; and 3) a finding that the equities entitle the Church to the terms it was promised. *See generally In re Marriage of Harvey*, 523 N.W.2d 755, 756 (Iowa 1994) (citing *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978), as stating the elements of a claim of promissory estoppel); *Farmers State Bank v. United Central Bank of Des Moines*, 463 N.W.2d 69, 71 (Iowa 1990) (same elements); *Chipokas v. Hugg*, 477 N.W.2d 688, 690–91 (Iowa Ct.App.1991) (same); *Matter of Scheib Trust*, 457 N.W.2d 4, 9 (Iowa Ct.App. 1990) (same). By agreement of counsel for the parties, only the first two of these elements were submitted to the jury by way of special verdict questions. Determination of the third element was left to the court, as was the legal implication of a finding of promissory estoppel.

On April 12, 1996, the court found that injustice could be avoided in this case only by enforcement of the promise made to the Church to provide coverage for all persons. Therefore, the court determined that this third prong of the Neelys' promissory estoppel claim had also been proved in this case and that, consequently, American Family was estopped to assert the exclusions upon which its denial of coverage to the Church in this case depended.

8. The elements of equitable estoppel, as stated in this case in Final Instruction No. 22, are as follows: (1) the failure by American Family to deliver the complete policy of insurance to the Church was a concealment of material terms of the insurance policy upon which it now relies; (2) lack of knowledge of the material terms of the policy on the part of the Church; (3) intention by American Family that the concealment be acted upon; and (4) reliance by the Church to its prejudice. *See, e.g., Morgan v. American Family Mut. Ins. Co.*, 534 N.W.2d 92, 100 (Iowa 1995); *Hicks v. Franklin County Auditor*, 514 N.W.2d 431, 441 (Iowa 1994).

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) RENEWAL OF MOTION FOR JUDGMENT AFTER TRIAL; ALTERNATIVE MOTION FOR NEW TRIAL. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. . . .

*Fed.R.Civ.P.* 50(a) & (b).[9]

### a. Procedural requirements

 Under *Fed.R.Civ.P.* 50(b), a litigant's post-trial motion for judgment as a matter of law on any claim may not be entertained unless the movant previously moved for judgment as a matter of law on that claim at the close of all evidence pursuant to *Fed.R.Civ.P.* 50(a). *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 197 (8th Cir.1995) (post-trial motion for judgment as a matter of law may not advance additional grounds not raised in pre-verdict motion); *Smith v. Ferrel*, 852 F.2d 1074, 1075 (8th Cir.1988) (record disclosed that no motion for "directed verdict" had been made at the close of all evidence, "appellant therefore cannot question the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal."); *Hubbard v. White*, 755 F.2d 692, 695 (8th Cir.) (motion for "directed verdict" at the close of evidence was an "essential condition precedent" to a motion for "judgment notwithstanding the verdict," and where no such motion was made at the close of evidence, the j.n.o.v. motion was barred), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Myers v. Norfolk Livestock Mkt., Inc.*, 696 F.2d 555, 558 (8th Cir.1982); *see also Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1214 (11th Cir.1991); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1261 (3d Cir.1991).[10] The motion for judgment as a matter of law at the close of the evidence must assert each of the grounds subsequently relied upon in the post-trial motion for judgment as a matter of law. *Midamar Corp. v. National–Ben Franklin Ins. Co.*, 898 F.2d 1333, 1337 (8th Cir.1990); *Lowe v. Conlee*, 742 F.2d 1140, 1141 (8th Cir.1984); *see also Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 956 (5th Cir.1993); *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 671 (5th Cir.

---

9. While Rule 50 was amended effective December 1, 1993, the amendment was technical in nature. "[P]rior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the names of these motions, but the standard for application of this rule remains the same." *Jackson v. Swift–Eckrich, Inc.*, 836 F.Supp. 1447, 1449 (W.D.Ark.1993), *aff'd*, 53 F.3d 1452 (8th Cir.1995). The Committee Notes to Rule 50 indicate:

This technical amendment corrects an ambiguity in the text of the 1991 revision of the rule, which, as indicated in the Notes, was not intended to change the existing standards under which "directed verdicts" could be granted. This amendment makes clear that judgments as a matter of law in jury trials may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

*Fed.R.Civ.P.* 50 advisory committee's note.

10. The advisory note to the 1963 amendment to *Fed.R.Civ.P.* 50(b) "unequivocally states a 'motion for a judgment notwithstanding the verdict will not lie unless it was preceded by a motion for directed verdict made at the close of the evidence.'" *Redd*, 934 F.2d at 1214.

1993). Thus, a party who either fails to move for judgment as a matter of law on any claim at the conclusion of the evidence or fails to renew at that time a motion for judgment as a matter of law made earlier than the close of the evidence has waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b), and instead must seek relief in a motion for new trial pursuant to *Fed.R.Civ.P.* 59. *Myers,* 696 F.2d at 558; *see also Purcell,* 999 F.2d at 956 (failure to renew motion waives right to file a post-verdict motion for judgment); *McCann,* 984 F.2d at 672 (motion for judgment as a matter of law made earlier than the close of evidence, but not renewed at the close of all evidence, "cannot serve as a predicate for a motion for judgment notwithstanding the verdict."); *Yohannon,* 924 F.2d at 1261 (party foreclosed from pursuing a motion for judgment notwithstanding the verdict for this reason is limited at the time of post-trial motions to a motion for new trial); *Riverview Inv., Inc. v. Ottawa Community Improvement Corp.,* 899 F.2d 474, 477 (6th Cir.) ("party seeking a judgment n.o.v. must, as a prerequisite, move for a directed verdict at the close of all the evidence or renew such motion if made prior to the close of all the evidence."), *cert. denied,* 498 U.S. 855, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1330 (6th Cir.1988) (party who fails to renew prior motion waives the original motion and is precluded from questioning the sufficiency of the evidence on appeal). American Family made a motion for judgment as a matter of law at the conclusion of the Neelys' evidence and at the conclusion of its own case. Therefore, American Family has not waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b).

### b. Evidentiary standard

In determining a motion for j.n.o.v. (and in the current parlance of Federal Rule of Civil Procedure 50, a motion for "judgment as a matter of law"), the court in *White v. Pence,* 961 F.2d 776 (8th Cir.1992), observed that

the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *See Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented,* 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1407 (8th Cir.1987); *Brown [v. Syntex Lab., Inc.],* 755 F.2d [668,] 671 [ (8th Cir.1985) ]. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.

*Pence,* 961 F.2d at 779 (footnotes omitted); *see also Gardner v. Buerger,* 82 F.3d 248, 251 (8th Cir.1996); *Butler v. French,* 83 F.3d 942, 943 (8th Cir.1996) (citing these standards from *Pence* ); *Simmons Poultry Farms, Inc. v. Dayton Road Dev. Co.,* 82 F.3d 217, 218–19 (8th Cir.1996) (citing *Pence*); *Sherlock v. Quality Control Equip. Co.,* 79 F.3d 731, 735 (8th Cir.1996); *Fox v. T–H Continental Ltd. Partnership,* 78 F.3d 409, 413 (8th Cir.1996) (citing *Pence* ); *Nelson,* 26 F.3d at 800 (citing *Pence* ); *First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.,* 2 F.3d 801, 808–09 (8th Cir.1993). Thus, this standard requires the district court to:

"consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.,* 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 989 (8th Cir. 1989)); *see also Stephens v. Johnson,* 83 F.3d 198, 199–200 (8th Cir.1996) (citing *Whitnack v. Douglas County,* 16 F.3d 954, 956 (8th

Cir.1994), in turn, quoting *Hastings v. Boston Mut. Life Ins. Co.*, 975 F.2d 506, 509 (8th Cir.1992)); *Haynes v. Bee–Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir.1996); *Nelson*, 26 F.3d at 800 (reiterating these factors, citing *Pence*, 961 F.2d at 779); *McAnally v. Gildersleeve*, 16 F.3d 1493, 1500 (8th Cir. 1994) (same).

■ This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally*, 16 F.3d at 1500. However, even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally*, 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 651 (8th Cir.1989), in turn, quoting *Marcoux v. Van Wyk*, 572 F.2d 651, 653 (8th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)); *see also Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir.1996) (a mere scintilla of evidence is inadequate to support a jury verdict) (quoting

*City of Omaha*, 883 F.2d at 651), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2792–93, 61 L.Ed.2d 560 (1979).

With these principles in mind concerning the standards for resolving post-trial motions under Federal Rule of Civil Procedure 50, the court turns to an examination of the evidence introduced at trial concerning the Neelys' claims to determine whether post-trial relief from the jury's verdict against American Family is appropriate.

### 2. *The Neelys' promissory estoppel claim under Iowa law*

American Family moves for judgment as a matter of law primarily on the ground that there was insufficient clear and convincing evidence to support the Neelys' claim of promissory estoppel.[11] Specifically, American Family alleges that there was "insufficient clear and convincing evidence of a clear and definite request for, and promise of, coverage that would reimburse the Church for tort liability damages incurred relative to claims made against the Church by its execu-

---

11. As a further ground for judgment as a matter of law, American Family contends that because Walter Neely was an executive officer or director at the time of his accident and because his actions were with respect to his duties as an executive officer or director of the Church, Walter was an insured under the insurance policy. Furthermore, because Walter was an insured under the policy, American Family claims it had no obligation in the underlying lawsuit to pay any amount of the default judgment entered by this court in favor of the Neelys and against the Church. The jury found that Walter Neely was an executive officer or director of the Church at the time of the accident and that his actions were with respect to his duties as an executive officer or director. However, the jury concluded that American Family is estopped from enforcing the exclusion relating to executive officers and directors because the provisions of American Family's policy were contrary to the terms of the promises made by American Family regarding coverage for the Church. Thus, the separate ground American Family alleges as a basis for judgment as a matter of law is, in essence, the same as its challenge to the jury's finding on the Neelys' promissory estoppel claim. Therefore, the court will address only American Family's argument that there was insufficient evidence to support the jury's finding of promissory estoppel in the text of this opinion.

Also, as an additional ground for judgment as a matter of law, American Family asserted in its brief that Final Jury Instruction No. 20 and Special Verdict Question No. 3 should not have been submitted to the jury because (1) there was insufficient evidence in the record to create a jury question as to whether or not the entire insurance policy was delivered to the Church, and (2) delivery or non-delivery of the entire policy was irrelevant under Iowa law, because there was no requirement in the insurance policy making coverage contingent upon physical delivery of the insurance contract. The court notes, as to the second contention, that the instruction on delivery did not state or suggest that delivery was a requirement of Iowa law; rather, delivery was defined for the jury to assist the jury in determining whether failure to deliver the policy constituted "concealment," the legally significant act here. However, at the hearing on its post-trial motions, American Family conceded that the instruction on delivery was not a ground for judgment as a matter of law because it pertained to the Neelys' claim of equitable estoppel, the claim on which the jury found in favor of American Family. Therefore, the court need not reach the issue of whether there was sufficient evidence to support the jury's finding that American Family did not "deliver" the complete policy to the Church.

tive officers or directors with respect to their duties as officers or directors."[12] American Family's Brief in Support of Its 50(b) Motion, p. 3. In addition, American Family claims that there was insufficient evidence of reliance by the Church on the alleged promise of coverage and of any detriment suffered by the Church as a consequence of the breach of the promise. The Neelys contend, however, that there was sufficient evidence of a clear and definite agreement between Pastor Moore, as representative of the Church, and American Family's representatives, Ron Holmberg and Steven Reinsch, that all persons, including executive officers and directors, were to be covered by this policy. The Neelys further argue that there was sufficient evidence in the record indicating that Pastor Moore relied on American Family's promise of coverage for all persons, as well as sufficient evidence in the record of the harm suffered by the Church due to the absence of coverage under the policy and by the Neelys as a consequence of the unsatisfied default judgment. Having introduced the general arguments of the parties, the court proceeds to a discussion of the elements of a promissory estoppel claim under Iowa law and an analysis of the evidence in the record pertaining to this claim.[13]

■ Under Iowa law, the elements of promissory estoppel are: (1) a clear and definite agreement; (2) proof that the party seeking to enforce the agreement reasonably relied upon it to the party's detriment; and (3) a finding that the equities support enforcement of the agreement. *In re Marriage of Harvey*, 523 N.W.2d 755, 756 (Iowa 1994) (citing *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978)); *Farmers State Bank v. United Central Bank of Des Moines*, 463 N.W.2d 69, 71 (Iowa 1990); *National Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989) (finding insufficient evidence of promissory estoppel where bank asserted a production credit association promised it a superior lien on a piece of property); *City of Cedar Rapids v. McConnell–Stevely–Anderson Architects & Planners, P.C.*, 423 N.W.2d 17, 19 (Iowa 1988) (applying promissory estoppel against a party asserting the invalidity of an ordinance); *Estate of Graham v. Fergus*, 295 N.W.2d 414, 418 (Iowa 1980); *Merrifield v. Troutner*, 269 N.W.2d 136, 137 (Iowa 1978); *Johnson v. Pattison*, 185 N.W.2d 790, 795 (Iowa 1971); *Miller v. Lawlor*, 66 N.W.2d 267, 273 (Iowa 1977); *see also Simmons Poultry Farms, Inc. v. Dayton Road Development Co.*, 82 F.3d 217, 220 (8th Cir.1996) (applying elements of promissory estoppel under Iowa law) (citing *Uhl v. City of Sioux City*, 490 N.W.2d 69, 73 (Iowa Ct.App.1992)); *Uhl v. City of Sioux City*, 490 N.W.2d 69, 73 (Iowa Ct.App.1992); *Chipokas v. Hugg*, 477 N.W.2d 688, 690 (Iowa Ct.App. 1991) (citing *National Bank of Waterloo*, 434

---

12. During the trial, the court also expressed its reservations about the Neelys' evidence of the "clear and definite agreement" necessary to meet the first element of a promissory estoppel claim under Iowa law. At the hearing on the entry of judgment on April 19, 1996, the court brought to the parties' attention the recent Eighth Circuit decision in *Fox v. T–H Continental Ltd. Partnership*, 78 F.3d 409 (8th Cir.1996), in which the Eighth Circuit overturned a jury verdict for the plaintiffs on the theory of promissory estoppel, on the grounds that the plaintiffs had not proved that the promise was not specific enough to constitute a "clear and definite agreement." *Fox*, 78 F.3d at 413. The court reiterated that this same issue, the lack of a clear and definite agreement, is precisely what it had identified to be one of the problems in this lawsuit and advised the parties to examine this issue closely in preparing their post-trial motions. Now, upon consideration of the post-trial motions, the court finds the "clear and definite agreement" issue to be decisive.

13. The Neelys' claim of promissory estoppel is particularly problematic because the Neelys did not present this theory of their case until after the close of their case in chief. After American Family made its motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b) and raised its concerns regarding the insufficiency of evidence on the Neelys' claim of equitable estoppel, counsel for the Neelys mentioned that the Neelys were also seeking recovery under the theory of promissory estoppel. At that time, the court noted the problems created by the introduction of this theory in the middle of trial, namely, the court's task in instructing the jury on a theory which had never been pled, had not been raised in the Neelys' motion for summary judgment, and had not been asserted in the pre-trial order. Nonetheless, in the interests of justice, the court submitted the issue of promissory estoppel to the jury, recognizing that the court's own reservations about the viability of such a claim would require post-trial scrutiny of any verdict favorable to the plaintiffs.

N.W.2d at 889); *Bradshaw v. Wakonda Club,* 476 N.W.2d 743, 748 (Iowa Ct.App.1991); *In the Matter of Scheib Trust,* 457 N.W.2d 4, 9 (Iowa Ct.App.1990). The party asserting the doctrine of promissory estoppel as its theory of recovery has the burden of proving this theory, and "strict proof of all elements is required." *National Bank of Waterloo,* 434 N.W.2d at 889 (citing *Pillsbury Co. v. Ward,* 250 N.W.2d 35, 39 (Iowa 1977)). In order to address each of the points raised by American Family in its renewed motion, the court will analyze the evidence of record in this case to determine whether there is sufficient evidence of a clear and definite agreement between the Church and American Family to support the jury's verdict on the Neelys' promissory estoppel claim.[14]

### a. The "clear and definite agreement" requirement

The first element of promissory estoppel the Neelys must prove under Iowa law is the existence of a "clear and definite agreement" between the parties. *See In re Marriage of*

*Harvey,* 523 N.W.2d at 756; *Farmers State Bank,* 463 N.W.2d at 71; *National Bank of Waterloo,* 434 N.W.2d at 889. No Iowa case has squarely defined a "clear and definite agreement" for purposes of satisfying the first element of promissory estoppel; however, in *National Bank of Waterloo v. Moeller,* the Iowa Supreme Court compared three cases interpreting this element, attempting to distinguish the conclusions of the court regarding whether the agreement in each case was a "clear and definite agreement." *National Bank of Waterloo,* 434 N.W.2d at 889–90 (discussing *In re Estate of Graham,* 295 N.W.2d at 418–419; *Johnson,* 185 N.W.2d at 795–97; *Miller,* 66 N.W.2d at 272–75); *see also Chipokas,* 477 N.W.2d at 690–91 (discussing *National Bank of Waterloo* and the Iowa Supreme Court's analysis of the three aforementioned cases). In *Miller v. Lawlor,* the Iowa Supreme Court upheld an oral promise by a landowner not to build a home on his property that would block his neighbor's view.[15] *Miller,* 66 N.W.2d at 272–

---

**14.** In Final Instruction No. 18, entitled "Burdens of Proof," the court instructed the jury that the Neelys must establish each of the elements of promissory estoppel by clear, convincing, and satisfactory evidence, rather than simply by the greater weight of the evidence. While neither party has raised the issue, the court observed for the first time in reviewing American Family's post-trial motions that the burden of proof applicable to a promissory estoppel claim may be proof by a preponderance of the evidence. *See Simmons Poultry Farms,* 82 F.3d at 220–21 (applying Iowa law and agreeing with defendant's assertion that "there is not sufficient evidence in the record from which a reasonable juror could find by a preponderance of the evidence that a clear and definite agreement existed between the parties"); *Jungmann v. St. Regis Paper Co.,* 682 F.2d 195, 197 (8th Cir.1982) (applying Iowa law and stating that the jury found a simple agreement by a preponderance of the evidence while an element of promissory estoppel is a "clear and definite agreement. The burden of proof was the same, but a plaintiff must prove a more distinct and specific agreement to establish promissory estoppel."); *Ted Spangenberg Co. v. Peoples Natural Gas, Division of Northern Natural Gas Co.,* 439 F.2d 1260, 1268 (8th Cir.1971) (applying Iowa law and affirming district court's conclusion that "appellant failed to establish, by a preponderance of the evidence, a clear and definite oral promise...."); *and compare Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92, 100 (Iowa 1995) (stating that "[t]o establish estoppel, the [plaintiff] must prove [the elements by] clear, convincing, and satisfactory evidence," but considering only an equitable estoppel claim); *National Bank of Waterloo v. Moeller,* 434 N.W.2d 887, 889 (Iowa 1989) (stating in promissory estoppel case that "[t]he burden of proving estoppel is on the party asserting it and strict proof of all elements is required."). Although Iowa law does not provide a clear statement of the burden of proof on a promissory estoppel claim, the result in this case remains the same whatever the correct burden may be. This is so, because whichever burden of proof is applicable, the court finds that the critical question is the existence of a "clear and definite agreement."

**15.** In *Miller,* plaintiff claimed that he told defendant that "under no circumstances would [he] make a bid upon that house if [defendant's] building plans were in any way to spoil the view to the south and southwest of [that] home." *Id.* at 269. Plaintiff further relayed to defendant that the previous owner of plaintiff's home told plaintiff that he and defendant had an agreement as to the location of defendant's house and plaintiff wanted confirmation from defendant that this was, in fact, the agreement. *Id.* Plaintiff then proceeded to state that the previous owner had told him that defendant had agreed he was building a hillside type of house down at the crest of the hill, and that is would not obstruct any view to the southwest and that the house would be low enough so that plaintiff could see over it. *Id.* In addition, plaintiff testified that he stated to defen-

75. In addition, in *Johnson v. Pattison,* the Iowa Supreme Court concluded that a promise not to use land for commercial purposes met the requirement of a "clear and definite agreement" to sustain a claim for promissory estoppel.[16] *Johnson,* 185 N.W.2d at 795. In comparing its analysis in *Miller* and *Johnson,* the court indicated that the first element was satisfied in these two cases, where there was "a clear understanding by the promisor that the promisee was seeking an assurance upon which he could rely and without which he would not act." *National Bank of Waterloo,* 434 N.W.2d at 889; *see also Chipokas,* 477 N.W.2d at 691.

In *National Bank of Waterloo,* on the other hand, the court noted that a clear and definite agreement was lacking in *Estate of Graham v. Fergus,* where the court had found that deposition testimony regarding a conversation in which a decedent stated that he wanted to "keep the farm in the family" was insufficient to prove an agreement to devise the property to his brother, the other party to the conversation. *See National Bank of Waterloo,* 434 N.W.2d at 889 (citing *Graham,* 295 N.W.2d at 419) (no evidence was presented proving that the parties intended to be bound by the conversation, and the deposition testimony did not indicate that the alleged agreement was either "clear" or "definite"). In differentiating between its conclusion in *Graham* and its decisions in *Miller* and *Johnson,* the Iowa Supreme Court did not offer an explicit definition of a "clear and definite agreement." Instead, the court placed a "dual emphasis on clarity and inducement, [which] parallels the Restatement (Second) definition of an agreement for

purposes of promissory estoppel as '[a] promise which the promisor should reasonably expect to induce action ... on the part of the promisee.' " *National Bank of Waterloo,* 434 N.W.2d at 889 (quoting Restatement (Second) of Contracts § 90 (1981)). Therefore, in the case before it in *National Bank of Waterloo,* the Iowa Supreme Court held that a letter concerning subordination of a mortgage was conditional and that it would be unreasonable to find that one was induced by the words of the letter to take action. *National Bank of Waterloo,* 434 N.W.2d at 890; *see also Chipokas,* 477 N.W.2d at 691.

The Iowa Court of Appeals conducted a similar comparison of the same three Iowa Supreme Court cases in *Chipokas v. Hugg,* 477 N.W.2d 688 (Iowa Ct.App.1991). There, the plaintiff asserted the doctrine of promissory estoppel, claiming he submitted a "Proposal To Lease" in order to obtain an assurance upon which he could and did rely by preparing plans and specifications for the property. *Chipokas,* 477 N.W.2d at 691. In addition, plaintiff claimed the defendant understood that the proposal was intended to create obligations upon which the plaintiff would rely. *Id.* In examining whether the plaintiff had met the first element of his claim of promissory estoppel, the Iowa Court of Appeals concluded that

> [w]hether we focus solely on the words of the proposal or consider its meaning in the surrounding circumstances, we are unable to find a clear and definite agreement that the [defendant] would reasonably understand to induce action.

dant, "If I purchase this house will you agree that you will not build your house north or west of [the agreed location]?" and defendant said "certainly." *Id.* Although defendant denied making references to specific numeric dimensions, he did not deny the testimony pertaining to his agreement with the previous owner or the substance of the agreement itself, which was that he would not build a house obstructing plaintiff's view. *Id.* at 270. Furthermore, defendant did not deny that plaintiff secured a definite agreement from him, with his full realization that plaintiff was contemplating purchase of the house in question on the strength of such agreement. *Id.* The court found that this was not a "casual conversation" between plaintiff and defendant, and defendant "must have understood

plaintiff was seeking an assurance upon which he could rely and without which he would not act." *Id.* at 273.

16. In *Johnson,* defendant admitted there was an agreement with plaintiff that defendant would use the land in question for residential purposes only; but asserted that the promise was to last only while the defendant had the land. *Id.* at 796. The court found that defendant admitted "just enough to lend credence to plaintiff's claim" and found that plaintiff had proven that he had received a promise from defendant that, if plaintiff purchased the real estate in question, the adjacent property owned by defendant would never be used for purposes other than residential use. *Id.*

*Id.* (finding that the language of the proposal to lease was decidedly conditional and some details in the proposal were left for future negotiation).

Most recently, in *Simmons Poultry Farms, Inc. v. Dayton Road Dev. Co.,* the Eighth Circuit Court of Appeals, applying Iowa law to a promissory estoppel case, overturned a district court's denial of judgment as a matter of law, finding that the evidence in the record did not reveal the existence of a clear and definite agreement as required by the first element of promissory estoppel. *Simmons,* 82 F.3d 217, 220–21 (8th Cir.1996). Defendant admitted that it had an agreement with plaintiff whereby defendant would supply turkey, plaintiff would process and package it, and defendant would market the end products. *Id.* Plaintiff claimed, however, that defendant had guaranteed that after an initial start-up period, it would supply 50,000 pounds of turkey per week for processing and packaging by plaintiff. *Id.* at 220. The court found that the evidence did not show that defendant had made a guarantee to supply plaintiff with a certain amount of turkey per week; rather, the evidence indicated that the parties had merely a goal or projection to supply a certain amount of turkey per week for processing purposes. *Id.* at 221. The court noted that

> [t]he only evidence of such a guarantee is the testimony of Walter, [a representative of the plaintiff], who stated in a general manner that Simmons made a poundage guarantee at some unidentified point in time. Walter identified Ron Ketcham and Jeff Lea as the individuals that "indicated to us" that 50,000 pounds per week "would

be the minimum." Walter does not identify to whom such an "indication" was made or when it was allegedly made. There is no evidence of an actual conversation wherein an individual representing Simmons stated to someone representing Carriage House that Simmons would guarantee Carriage House would receive 50,000 pounds of turkey per week to process and package. When considered in light of the documentary evidence Walter's testimony is not susceptible to a reasonable inference that a clear and definite agreement containing a poundage guarantee existed between the parties.

*Id.*[17]

#### b. Evidence of the agreement here

The Neelys claim they met the first element of promissory estoppel in that a clear and definite agreement existed between American Family and Pastor Fred Moore that the policy would provide the Church with coverage for all persons, including executive officers, directors, and employees. In his meeting with Ron Holmberg for the purpose of purchasing a policy for the Church, Pastor Moore stated that he "asked for everyone and everything to be covered underneath this policy." Partial Trial Transcript, p. 10, Testimony of Pastor Moore.[18] When asked at trial how American Family responded to this request, Pastor Moore testified that he "was assured that everything would be covered and that [the Church] had what [it] had asked for." Partial Trial Transcript, p. 10, Testimony of Pastor Moore. American Family contends that there is no evidence in the record that Pastor Moore ever made a

---

17. In addition to its decision in *Simmons,* the Eighth Circuit Court of Appeals recently applied Minnesota law governing the doctrine of promissory estoppel in *Fox v. T–H Continental Ltd. Partnership,* 78 F.3d 409 (8th Cir.1996). The first element of promissory estoppel under Minnesota law is the same as that required under Iowa law, namely, a clear and definite promise. *Fox,* 78 F.3d at 413. Here, Fox argued that her employment with T–H was not at will, but instead was "permanent" and terminable only for cause. *Id.* Under Minnesota law, promissory estoppel is an equitable remedy that "may be used to enforce a promise of employment where no express contract of employment exists." *Id.* (quoting *Eklund v. Vincent Brass & Aluminum*

*Co.,* 351 N.W.2d 371, 378 (Minn.Ct.App.1984), in turn, citing *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981)). The court found that Fox had produced no evidence that T–H made a clear and definite promise of continued employment terminable only for cause. *Id.* Thus, the court concluded that Fox's evidence was "insufficient to overcome Minnesota's strong presumption of at-will employment," and T–H was entitled to judgment as a matter of law. *Id.*

18. The court requested a partial transcript of just the trial testimony of Pastor Fred Moore for purposes of the disposition of post-trial motions in this case.

specific request for coverage of executive officers or directors, performing acts relative to their duties as executive officers or directors. In addition, American Family asserts that it made no assurances to Pastor Moore that it would provide coverage for everyone and everything. Although Iowa decisions provide no precise definition of a "clear and definite agreement," the Iowa Supreme Court has emphasized the necessity of "clarity" and "inducement" in order to satisfy the first element of promissory estoppel. *See National Bank of Waterloo,* 434 N.W.2d at 889 (quoting Restatement (Second) of Contracts § 90 (1981)). Thus, the court must consider the sufficiency of the evidence, and the reasonable inferences to be drawn from that evidence, on these two critical aspects of the purported agreement in this case.

**■ i. Clarity.** In analyzing the clarity of the alleged agreement between the Church and American Family, Pastor Moore's request for coverage for "everyone" and "everything" is far from being either "clear" or "definite." Such a request is vague, looking first at the words of the proposal, and it is not clarified by the surrounding circumstances. *Chipokas,* 477 N.W.2d at 691. The request for coverage was made in negotiation of business liability insurance, but in light of that context, the request becomes more, not less, ambiguous. For example, "everyone" could mean everyone, including Church members, employees, officers or directors, who might be injured by actions of the Church, its employees, or on Church property. It could also mean coverage for "everyone" identified as a church member or employee, or whose actions could be attributed to the church, against any claims that could be made against them by a third party. In other words, does the "everyone" refer to injured persons or to actors whose actions could be attributed to the Church? Pastor Moore's failure to narrow this request to specify in any way to whom he was referring when asking for coverage for "everyone" or to otherwise articulate what kind of coverage he meant, whether it was liability coverage for the employees of the Church against third parties or coverage for employees, officers and directors of the Church against the

Church itself, renders this request hopelessly ambiguous. Because the request was ambiguous, it does not reasonably touch on or constitute a clear and definite promise on American Family's part not to exclude from coverage persons such as officers and directors performing acts relative to their duties who could properly be identified with the Church itself as opposed to injured third parties.

Furthermore, the evidence here compares unfavorably with the evidence of an agreement in both *Miller* and *Johnson,* the cases in which the Iowa Supreme Court found sufficiently clear and definite agreements to impose a promissory estoppel. *Johnson,* 185 N.W.2d at 796 (promise to use adjacent land for residential purposes only); *Miller,* 66 N.W.2d at 270 (promise not to construct a home that would obstruct a neighbor's view). In those cases, the defendants' attempts to refute the plaintiffs' claims of promissory estoppel virtually admitted the existence of a clear agreement and apparent understanding of the nature of the agreement; however, the defendants in both cases quibbled over minor details concerning the logistics of the agreements, including the precise dimensions of the house obstructing the plaintiff's view in *Miller,* 66 N.W.2d at 270, and the duration of the promise to use the land only for residential purposes in *Johnson,* 185 N.W.2d at 796. Here, however, American Family disputes even a general agreement on the extent of coverage for officers and directors.

Also, although there appears to have been a general agreement that American Family would provide insurance coverage, the dispute as to the meaning of Pastor Moore's request for coverage for "everyone" and "everything" does not concern minor details collateral to the general agreement. *See Simmons,* 82 F.3d at 220–21. In *Simmons,* the Eighth Circuit Court of Appeals required a clear and definite agreement as to the specific terms sought to be enforced by promissory estoppel even where there was no controversy that the general agreement had been reached. Insurance policies are designed for the purpose of providing coverage for specific persons, items, or events. In such a context, the failure to delineate the type and extent of

coverage is fatal to an agreement about the specifics of the coverage the insurance contract is to provide. Thus, the evidence presented at trial is more comparable to the expression of a general desire insufficient to translate into a clear and definite agreement about the specifics of how that desire is to be executed, *see Graham*, 295 N.W.2d at 419 (expression of desire that decedent wanted to "keep the farm in the family" did not constitute clear and definite agreement to devise the farm to his brother); *see also Simmons*, 82 F.3d at 220–21 (mutual desire for 50,000 pounds of turkey per week did not translate into clear and definite agreement to provide that much turkey per week), than it is comparable to evidence of agreement on details in execution of the desired end. *Johnson*, 185 N.W.2d at 796; *Miller*, 66 N.W.2d at 270. Even viewing the evidence in the light most favorable to the verdict and granting the plaintiffs all reasonable inferences to be drawn from that evidence, *Pence*, 961 F.2d at 779, Pastor Neely's testimony, and in particular, the generic nature of his request for coverage, are not susceptible to a reasonable inference that American Family and the Church had a clear and definite agreement under which American Family would provide coverage to the Church for all persons, including executive officers and directors performing acts relative to their duties as executive officers or directors, for injuries they might suffer as the result of Church actions or on Church property.

**■ ii. Inducement.** Furthermore, the second factor the Iowa Supreme Court emphasized in analyzing whether a clear and definite agreement exists for purposes of establishing a promissory estoppel claim is inducement. *See National Bank of Waterloo*, 434 N.W.2d at 889. Adhering to the definition in the Restatement (Second) of Contracts, the court indicated that to establish a claim of promissory estoppel, the plaintiff must prove the existence of "a promise which the promisor should reasonably expect to induce action ... on the part of the promis-

ee." *See id.* (quoting Restatement (Second) of Contracts § 90 (1981)). In both *Miller* and *Johnson*, the plaintiffs articulated that they would not act without assurance from the defendants that the promises at issue would be kept, and in both cases, those assurances were given. *See Miller*, 66 N.W.2d at 270; *Johnson*, 185 N.W.2d at 796. Here, there is no evidence in the record that Pastor Moore made any indication to American Family that the Church would not purchase a policy with American Family if coverage for everything and everyone was not provided. Based upon the ambiguous nature of Pastor Moore's request, a jury could not reasonably infer that American Family had a "clear understanding" that the Church " 'was seeking an assurance upon which it could rely and without which it would not act.' " *See Simmons Poultry Farms*, 82 F.3d at 220 (quoting *National Bank of Waterloo*, 434 N.W.2d at 889). Thus, because of the lack of clarity regarding the agreement between American Family and the Church and the absence of evidence of a promise which American Family would have reasonably expected to induce action on the part of the Church, *see National Bank of Waterloo*, 434 N.W.2d at 889 (quoting Restatement (Second) of Contracts § 90 (1981)), the court finds that American Family is entitled to judgment as a matter of law on the Neelys' claim of promissory estoppel and grants American Family's motion pursuant to *Rule* 50(b).[19]

### 3. Summary

In summary, the court concludes that American Family's motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b) should be granted. The court concludes that the evidence presented falls far short of proof, by any standard, of a clear and definite agreement upon which promissory estoppel can be based. The jury's verdict on the Neelys' promissory estoppel claim must be set aside and judgment entered in favor of American Family.

19. American Family also contends that there is insufficient evidence in the record showing reliance by the Church on the alleged agreement to provide coverage for all persons. However, as the court has found insufficient evidence to support the jury's finding of a "clear and definite agreement," it is not necessary to discuss the two remaining elements of a promissory estoppel claim or analyze the sufficiency of the evidence regarding these elements.

### B. American Family's Post–Trial Motion Pursuant to Fed.R.Civ.P. 59

■ American Family has also moved for a new trial on the ground that "there was sufficient evidence in the record to warrant a submission to the jury as to whether or not Loretta Neely was an executive officer or board member at the time of the accident and whether or not the accident and damages were relative to her duties as an officer or director." American Family's Motion for New Trial, p. 1. However, the court's ruling on American Family's motion for judgment as a matter of law moots this motion for new trial, because any claim of Loretta Neely was derivative of Walter Neely's claim. Because judgment as a matter of law must be entered in favor of American Family on Walter's claims, it must likewise be entered in favor of American Family on Loretta's claim of loss of consortium.

### C. The Neelys' Motion For New Trial

■ In their brief in resistance to American Family's renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), the Neelys state that in the event the court grants American Family's motion for judgment as a matter of law, they move for a new trial pursuant to Fed.R.Civ.P. 59. The Neelys' ground for a new trial is that the jury's findings that Walter Neely was an executive officer or director of the Church on the date of his accident and that Walter's actions in lighting the boiler on that same date were with respect to his duties as an executive officer or director of the Church were against the greater weight of the evidence. The Neelys concede that Walter Neely was a director of the Church after his retirement in 1990. However, the Neelys claim there is no evidence in the record that Walter was acting as an executive officer or director at the time of his accident and that his actions were with respect to his duties as an executive officer or director. Therefore, the Neelys argue the exclusion in the policy did not apply to Walter, and he should have been covered under the Church's insurance policy.

Federal Rule of Civil Procedure 59, entitled "New Trials; Amendment of Judgments," states in relevant part:

(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . .

Fed.R.Civ.P. 59(a). Regarding motions for new trial under Federal Rule of Civil Procedure 59, the court in White v. Pence, 961 F.2d 776 (8th Cir.1992) observed:

With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" Ryan v. McDonough Power Equip., 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in Brown, 755 F.2d at 671–73; Slatton [v. Martin K. Eby Constr. Co.], 506 F.2d [505,] 508 n. 4 [ (8th Cir.1974), cert. denied, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ]; Bates [v. Hensley], 414 F.2d [1006,] 1011 [ (8th Cir.1969) ], and early authority cited in Bates. See also Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1266 (8th Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

Id. at 780. Thus, the court in Pence concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. Id.; see also Shaffer v. Wilkes, 65 F.3d 115, 117 (8th Cir.1995) (citing Pence for this standard); Rush v. Smith, 45 F.3d 1197, 1203 (8th Cir.) (also citing Pence for this standard), cert. denied, —— U.S. ——, 116 S.Ct. 409, 133 L.Ed.2d 328 (1995); Nelson, 26 F.3d at 800

("[A] motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co.*, 19 F.3d at 1266 (correct standard for new trial is conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice.").[20]

The court concludes that the jury's findings regarding Walter Neely's status with the Church at the time of his accident and regarding whether his actions in lighting the boiler were with respect to his duties as an executive officer or director were not against the greater weight of the evidence. *Pence*, 961 F.2d at 780. In fact, there was ample evidence presented at trial which support the jury's conclusion that, subsequent to his retirement, Walter Neely continued as an executive officer or director of the Church. In addition, despite evidence presented at trial that maintenance work was typically completed by volunteers in the Church, the jury could have reasonably concluded that Walter was not acting as a volunteer in lighting the boiler, but was instead completing this task with respect to his duties as an executive officer or director of the Church. Thus, the court finds that the jury's findings on Walter's status with the Church and whether he was acting with respect to his duties as an executive officer or director are not against the great weight of the evidence, *see Pence*, 961 F.2d at 780, and denies the Neelys' motion for new trial.

### III. CONCLUSION

Based upon a review of the evidence in the record and viewing the evidence in a light most favorable to the Neelys, the court finds there was insufficient evidence to support the jury's finding that there was a clear and definite agreement between the Church and American Family that the terms of the policy purchased by the Church from American Family would provide coverage for all persons, including officers and directors acting with respect to their duties as officers and directors. Therefore, the court grants American Family's renewed motion for judgment as a matter of law pursuant to *Fed. R.Civ.P.* 50(b).

Additionally, the court concludes that the jury's findings that Walter Neely was an executive officer or director of the Church on the date of his accident and that Walter's actions in lighting the boiler on that same date were with respect to his duties as an executive officer or director of the Church were not against the greater weight of the evidence. Thus, the court denies the Neelys' motion for new trial pursuant to *Fed.R.Civ.P.* 59.

The verdict of the jury and judgment pursuant to the verdict are set aside and judgment as a matter of law is entered in favor of defendant American Family.

**IT IS SO ORDERED.**

---

20. Rule 59(a) specifically provides for the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States," *Fed.R.Civ.P.* 59(a), and the court does not mean to suggest that a verdict against the great weight of the evidence is the only ground for a new trial in a civil action. *See, e.g., Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir.1994) (new trial may be granted on the basis of a question by counsel that places prejudicial information before the jury, citing *Sanders–El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir. 1993), and *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 188 (8th Cir.1987)); *Norton. v. Caremark, Inc.*, 20 F.3d 330, 338 (8th Cir.1994) (noting that *Fed.R.Civ.P.* 61 specifically prohibits the grant of a new trial based on errors in admission of evidence, "unless refusal to take such action appears to the court inconsistent with substantial justice."); *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 114 (8th Cir.1993) (improper jury instruction or failure to comply with Rule 51 may be ground for new trial, but only if moving party can show material prejudice); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 385 (8th Cir.1992) (misconduct of counsel may be grounds for new trial, but the court must judge whether there has been an effect on the substantive rights of the parties, or whether the misconduct created undue prejudice or passion tainting the proceedings, particularly in light of whether the district court concludes that an effective curative instruction has been given).